**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

CHERILYN F. C.,[1]

Plaintiff,

v. Case No. 2:25-cv-600-KRH

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

_____________________________/

**OPINION AND ORDER**

Cherilyn F. C. filed her claim for disability insurance benefits ("DIB") on November 3, 2021, alleging disability beginning May 13, 2014. After the Social Security Administration initially and upon reconsideration denied her application, she requested and was granted a telephonic hearing before an administrative law judge ("ALJ"). The ALJ held the hearings on October 20, 2023, and February 23, 2024, and issued a decision on May 30, 2024, finding Cherilyn F. C. not disabled. On May 6, 2025, the Appeals Council denied review, and on July 9, 2025, Cherilyn F. C. filed this appeal under 42 U.S.C. § 405(g). As explained below, the Court finds the Commissioner's decision is affirmed.

[1] Consistent with guidance from the Judicial Conference's Committee on Court Administration and Case Management regarding privacy concerns in **Social Security** cases, the Court identifies the plaintiff only by first name and last initial.

## Background

Cherilyn F. C. was 38 years old when she applied for DIB. She has at least a high school education and past relevant work experience as a reading improvement teacher. (Doc. 10-2 at 39-40). Her impairments include degenerative disc disease, complex regional pain syndrome, fibromyalgia, obesity, anxiety, depression, and other disorders. (Doc. 10-2 at 26).

The ALJ evaluated Cherilyn F. C.'s claim using the five-step sequential evaluation process for determining disability.[2] At step one, he found that she had not engaged in substantial gainful activity since May 13, 2014, the alleged disability onset date. (Doc. 10-2 at 26). At step two, he found that Cherilyn F. C. had the following severe impairments: status post ("SP") bilateral silicone breast implants, with rupture of the implant on the right side; SP bilateral foot surgery; a history of

[2] Disability is defined by statute as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In evaluating a disability claim, the ALJ engages in a five-step sequential process, making the following determinations: (1) whether the claimant is presently engaging in substantial gainful activity (if so, a finding of "not disabled" is made); (2) whether the claimant has a severe impairment (if not, a finding of "not disabled" is made); (3) whether the impairment is listed, or equivalent to an impairment listed, in 20 C.F.R. Part 404, Subpart P, Appendix 1 (if so, then the claimant is found to be disabled); (4) whether the impairment prevents the claimant from doing past relevant work (if not, the claimant is found to be not disabled); and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity (if so, the claimant is found to be disabled). *See* 20 C.F.R. §§ 404.1520, 416.920. The analysis ends at the point at which a finding of disability or non-disability is required. The claimant bears the burden to prove disability through the first four steps; if she sustains her burden through step four, the burden shifts to the Commissioner at step five. *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1321 (11th Cir. 2021). If the Commissioner meets this burden, the claimant must then prove she cannot perform the work identified by the Commissioner. *Goode v. Comm'r of Soc. Sec.*, 955 F.3d 1277, 1278 (11th Cir. 2020).

hypothyroidism; SP placement of spinal stimulator in 2016 with cerebral spinal fluid leak; SP left foot surgery in 2015 at the fourth metatarsal; gastrointestinal disorders, including dysautonomia; lumbar spine degenerative disc disease, complex regional pain syndrome; fibromyalgia; obesity; pelvic floor dysfunction and uterine fibroids; anxiety; and depression. (Doc. 10-2 at 26). At step three, the ALJ found that Cherilyn F. C. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1; (Doc. 10-2 at 27).

The ALJ then examined the record and determined that Cherilyn F. C. had the residual functional capacity ("RFC") to perform sedentary work, with the following limitations:

> The claimant can occasionally climb ramps/stairs, but can never climb ropes/ladders/scaffolds, and does not work at unprotected heights, around exposed moving mechanical parts or with dangerous machinery or equipment such as that which cuts, tears, crushes, shears or punctures in its operations. The claimant can occasionally balance, stoop, kneel, crouch or crawl. The claimant can work with occasional exposure to extreme heat/cold, and can work in environments of up to but not greater than Moderate Noise Intensity Level, but does not work around flashing lights or strobes. The claimant carries out simple instructions, makes simple decisions in the workplace, performs simple routine tasks, occasionally adjust to changes in workplace routines, maintains contact frequently with supervision, and occasionally with coworkers and the public.

(Doc. 10-2 at 31).

At step four, the ALJ found that Cherilyn F. C. could not perform her past relevant work as a reading improvement teacher. (Doc. 10-2 at 39). At step five, the ALJ determined that other jobs exist in significant numbers in the national

economy that Cherilyn F. C. can perform. (Doc. 10-2 at 40-41). Relying on the testimony of the vocational expert ("VE"), the ALJ concluded Cherilyn F. C. can perform the jobs of addressing clerk (6,000 jobs nationally), document preparer (14,000 jobs nationally), and lens inserter (9,000 jobs nationally). (Doc. 10-2 at 41). He therefore found that Cherilyn F. C. was not disabled. (Doc. 10-2 at 41).

## Legal Standard

As the Eleventh Circuit has stated:

> In Social Security appeals, we must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards. Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].

*Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citations and quotations omitted). "With respect to the Commissioner's legal conclusions, however, our review is *de novo*." *Lewis v. Barnhart*, 285 F.3d 1329, 1330 (11th Cir. 2002).

That said, the ALJ must state the grounds for his decision with enough clarity to enable the Court to conduct a meaningful review. *Keeton v. Dep't of Health & Hum. Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (finding "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal"); *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984).

In making its decision, the Court must review the entire record before it. *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (citing *Bridges v. Bowen*, 815 F.2d 622 (11th Cir. 1987)).

**Discussion**

Cherilyn F. C. raises two issues on appeal: (1) whether the ALJ and Appeals Council properly considered the requirements of EM-24027 before denying her claim and request for review, given the decisions' reliance on the jobs of document preparer and addressing clerk; and (2) whether the ALJ properly evaluated Cherilyn F. C.'s need for a service animal in denying her claim. Pl.'s Br. (Doc. 12 at 1). The Court addresses each in turn.

**A. The ALJ's Step-Five Finding is Supported**

Cherilyn F. C. assigns two related errors to the ALJ's step-five determination: (1) that the VE's testimony regarding the current performance of the document preparer and addressing clerk positions was too unreliable to constitute substantial evidence, particularly given Emergency Message EM-24027 and its successor, EM-24027 REV, addressing these specific occupations; and (2) that even if this Court excludes those two jobs, the ALJ's decision contains no finding that the remaining job—lens inserter, at 9,000 positions—exists in significant numbers on its own, requiring remand under *Viverette v. Comm'r of Soc. Sec.*, 13 F.4th 1309 (11th Cir. 2021).

**1. The VE's Testimony Did Not Fall Below the Substantial-Evidence Threshold**

At the hearing, the ALJ asked the VE whether the document preparer and addressing clerk positions had "undergone changes in terms of the processes, duties, the requirements, or the equipment used" since the Dictionary of Occupational Titles ("DOT") was last updated. (Doc. 10-2 at 66-67). The VE responded:

> Yes, Your Honor. Both have for example the addressing clerk uses a simple program on a computer versus a typewriter, and the document preparer is about data archiving and digital scanning. But it does not, in my professional opinion, it does not alter the complexity of the positions. They're still unskilled positions and nor does it alter the exertional level of being beyond sedentary?

(Doc. 10-2 at 67). Cherilyn F. C. contends that the final sentence of this answer is ambiguous because it is transcribed as a question rather than a statement, leaving it unclear whether the VE ever confirmed that these positions remain unskilled and sedentary despite the technological changes she described. Pl.'s Br. (Doc. 12 at 7-8).

Having reviewed the full hearing colloquy, the Court does not find the transcript genuinely ambiguous in the manner Cherilyn F. C. suggests. The disputed sentence appears within a single, unbroken answer attributed to the VE, with no intervening speaker designation suggesting an interjection by the ALJ. *See* (Doc. 10-2 at 67). The sentence right before it, "But it does not, in my professional opinion, it does not alter the complexity of the positions," is itself awkwardly transcribed, with a misplaced negation and irregular punctuation. (Doc. 10-2 at 67). Yet no party disputes that this sentence reflects the VE's own testimony rather

than an unresolved conflict in the record. Read in the context of the same halting, run-on answer, the disputed sentence reasonably conveys the VE's continued opinion that neither modernization the VE described altered the skill level or exertional level of either position. In other words, that the jobs "[are] still unskilled positions and [it does] not alter the exertional level of being beyond sedentary[.]" This reading is consistent with the ALJ's own paraphrase of the testimony in the written decision, which states that the VE testified the jobs "remain[] at sedentary, still remain[] unskilled SVP 2, and are still compatible with the [RFC]." (Doc. 10-2 at 41).

A transcription irregularity of this kind, i.e., a misplaced punctuation mark within an otherwise continuous and substantively coherent answer, does not render the underlying testimony unreliable. *See Lee v. O'Malley*, No. 8:23-cv-02049-AEP, 2024 WL 4284994, at *4 (M.D. Fla. Sept. 25, 2024) (rejecting a claim of reversible error based on ALJ's reference to wrong DOT job number). Nor does this passage reflect the kind of apparent, unresolved conflict addressed in *Washington v. Comm'r of Soc. Sec.,* 906 F.3d 1353 (11th Cir. 2018). It identifies no discrepancy between the VE's testimony and the DOT. Rather, it presents, at most, an awkwardly punctuated rendering of a single continuous answer.

The ALJ's reliance on this testimony likewise complied with Emergency Message EM-24027 REV, which requires that an ALJ relying on the document preparer occupation obtain VE testimony that the position, as currently performed, is consistent with the claimant's RFC and exists in significant numbers.

*See Soc. Sec. Admin.*, EM-24027 REV. Courts applying this Emergency Message to similar VE testimony have held that an ALJ satisfies this requirement by asking the VE whether the relevant jobs have changed and eliciting a reasoned explanation that the RFC-relevant characteristics of the positions—here, skill level and exertional level—remain unchanged. *See, e.g.*, *Newman v. Bisignano*, No. CV 625-026, 2026 WL 1649989, at *4-5 (S.D. Ga. June 8, 2026) (finding compliance where the VE explained the addresser and callout operator positions had incorporated computer software but that SVP and physical demands remained unchanged); *Fitzpatrick v. Comm'r of Soc. Sec.*, No. 8:25-cv-82-NHA, 2025 WL 3267998, at *5-6 (M.D. Fla. Nov. 24, 2025) (same as to the document preparer position specifically). The ALJ did precisely that here, and the transcript does not reflect that Cherilyn F. C. cross-examined the VE regarding either the substance of her testimony or her qualifications. (Doc. 10-2 at 67); *see Valdez v. Comm'r of Soc. Sec.*, 808 F. App'x 1005, 1010 (11th Cir. 2020) (claimant who did not object to or cross-examine VE testimony at the hearing may not later challenge it on that basis).

Cherilyn F. C. further argues that after this exchange, the ALJ moved directly to a new hypothetical without eliciting any express confirmation from the VE. That observation is accurate but does not change the Court's conclusion. Neither Social Security Ruling 00-4p nor Eleventh Circuit precedent requires an ALJ to obtain further verbal confirmation of testimony already given before proceeding with the hearing. The requirement is that the record contain a reasoned basis for the ALJ's

finding, not that it contain a colloquy of confirmation and re-confirmation. *See Washington*, 906 F.3d at 1362-66. Because the VE's answer, read in full, already supplied that reasoned basis, the absence of a further confirming question does not undermine it.

Cherilyn F. C. further points to current classifications maintained by the Occupational Information Network ("O*NET"), the Department of Labor's successor system to the DOT, which describe the document preparer and addressing clerk occupations, as currently performed, as skilled work with an SVP of 4 to 6. She says that this is in tension with the VE's testimony that the positions remain unskilled. This argument does not, however, undermine the ALJ's reliance on the VE's testimony. Social Security Ruling 24-3p permits, but does not require, an ALJ or VE to consult sources such as O*NET in place of the DOT. The DOT remains an acceptable source of vocational information notwithstanding the availability of newer classification systems. *See* 89 Fed. Reg. 97158-01, 2024 WL 4988840 (Dec. 6, 2024); *Newman*, 2026 WL 1649989, at *6 (rejecting an identical O*NET-based argument because "the SSR does not mandate a different outcome" where the ALJ relies on VE testimony consistent with the DOT). Nor do the record excerpts before the Court reflect that Cherilyn F. C. raised this discrepancy at the hearing or asked the VE to reconcile her testimony with the O*NET classifications. *See Valdez*, 808 F. App'x at 1010.

The conclusion is consistent with a well-settled pattern among courts in this district rejecting comparable obsolescence challenges absent record evidence

contradicting the VE's testimony. *See, e.g.*, *Amones v. Comm'r of Soc. Sec.*, No. 2:25-cv-1130-SJH, 2026 WL 2137298, at *5 (M.D. Fla. July 24, 2026) (declining to find jobs of router and marker obsolete, collecting cases); *Hemmings v. Kijakazi*, No. 8:23-cv-977-SPF, 2023 WL 6173448, at *7 (M.D. Fla. Sept. 22, 2023) (rejecting an obsolescence challenge to the router position where claimant relied only on non-binding, out-of-circuit authority); *Gonzalez v. Comm'r of Soc. Sec.*, No. 8:23-cv-106-JSS, 2024 WL 489494, at *8-9 (M.D. Fla. Feb. 8, 2024) (same as to routing clerk); *Hall v. Comm'r of Soc. Sec.*, No. 3:23-cv-1141-DNF, 2024 WL 3385452, at *5 (M.D. Fla. July 12, 2024) ("the regulations still include the DOT as an acceptable source for job data evidence"); *Trettis v. Comm'r of Soc. Sec.*, No. 2:23-cv-638-DNF, 2024 WL 3423004, at *9 (M.D. Fla. June 15, 2024) (same). As in those cases, Cherilyn F. C. has identified no record evidence—as opposed to counsel's argument or out-of-circuit authority—establishing that the document preparer or addressing clerk positions, as the VE described them, no longer exist in significant numbers.

One further point requires attention. EM-24027 was not published until after the ALJ's decision, and Cherilyn F. C. separately argues the Appeals Council was independently obligated to apply the Emergency Message when it denied review in May 2025. The Commissioner's brief does not squarely respond to this argument, but the Court does not treat that silence as a concession. Cherilyn F. C.'s argument presupposes that the Appeals Council's review would have surfaced a deficiency in the ALJ's EM-24027 compliance left uncorrected by the ALJ himself. But because the ALJ's colloquy with the VE substantively satisfied what EM-24027

requires, as explained above, there was no such deficiency for the Appeals Council to have corrected by applying the Emergency Message on review. The timing question Cherilyn F. C. raises therefore does not present an independent basis for remand once the underlying compliance question is resolved in the Commissioner's favor. *See Newman*, 2026 WL 1649989, at *4 (finding compliance with the Emergency Message's substance notwithstanding its inapplicability at the time of the ALJ's decision).

For these reasons, the Court finds that the VE's testimony regarding the document preparer and addressing clerk positions constitutes substantial evidence supporting the ALJ's step-five finding.

**2. The Aggregation Argument Is Not Reached**

Cherilyn F. C. separately argues that even if the document preparer and addressing clerk positions are excluded, the ALJ's decision does not find that the remaining lens inserter position (9,000 jobs nationally) exists in significant numbers on its own, and that remand is therefore required. This argument, however, is a remedy for a predicate finding that a challenged job's supporting testimony was unreliable. It does not establish unreliability. *See Viverette*, 13 F.4th at 1317-18 (addressing the significant-numbers question only after the document preparer position had been excluded on an apparent-conflict basis); *Ralph S.L. v. Comm'r, Soc. Sec. Admin*, No. 1:24-cv-2512-SEG, 2025 WL 3314023, at *10-12 (N.D. Ga. Sept. 25, 2025) (same analytical sequence). Because the Court has found in Section A.1 above that substantial evidence supports the VE's testimony

regarding the document preparer and addressing clerk positions, there is no basis to exclude either job from the ALJ's aggregate finding.

The Court accordingly does not reach whether the ALJ's decision would otherwise satisfy *Viverette*'s requirement of an individualized significant-numbers finding, as that question is only presented once a job has been properly excluded from the aggregate.

**B. The ALJ's Treatment of the Service Animal**

Cherilyn F. C. next argues that the ALJ erred by failing to evaluate whether her service dog was medically necessary and, relatedly, by failing to include any corresponding limitation in the RFC or to explain its omission.

A service animal "must be medically necessary to be considered in an RFC assessment." *Byrne v. Comm'r of Soc. Sec.*, No. 2:24-cv-336-NPM, 2025 WL 2753603, at *8 (M.D. Fla. Sept. 29, 2025) (quoting *Cruz v. Comm'r of Soc. Sec. Admin.*, 406 F. Supp. 3d 1337, 1346 (M.D. Fla. 2019)). Medical necessity, in turn, depends on whether "the evidence shows that the service dog was medically prescribed or recommended." *Hewitt v. Saul*, No. 8:19-cv-83-T-SPF, 2020 WL 1181953, at *3 (M.D. Fla. Mar. 12, 2020) (quoting *Cruz*, 406 F. Supp. 3d at 1347). Absent such evidence, the ALJ is not required to consider the claimant's need for a service dog in the RFC assessment. *Id.*; *Higdon v. O'Malley*, No. 3:24-cv-214-WWB-SJH, 2024 WL 5484093, at *2 (M.D. Fla. Sept. 12, 2024), *R&R adopted sub nom. Higdon v. Comm'r of Soc. Sec. Admin.*, 2025 WL 778773 (M.D. Fla. Mar. 12, 2025) (a claimant must show that the dog's use would affect the RFC or the

claimant's ability to work and an ALJ's failure to make an explicit finding is not itself reversible error where the claimant has not identified evidence meeting this two-part showing).

The ALJ did not merely acknowledge Cherilyn F. C.'s testimony in passing. He referenced her dog, Lucy, on several occasions in the decision. (Doc. 10-2 at 30, 32, 36, 39). He also specifically described Lucy's function, noting that she "is trained to let the claimant know if the water is too hot or to[o] cold, or if her blood pressure is too high." (Doc. 10-2 at 32). The ALJ did not, however, make an express finding regarding the dog's medical necessity, nor did he address the July 2017 letter from Cherilyn F. C.'s treating psychiatrist, Dr. Alan Manevitz. (Doc. 10-11 at 315).

Dr. Manevitz's letter states that he had treated Cherilyn F. C. following her response to an April 2014 foot surgery and her diagnosis of complex regional pain syndrome, with subsequent treatment through multiple pain specialists and further surgical complications, and that her psychiatric diagnoses and pain residuals resulted in post-traumatic stress disorder. (Doc. 10-11 at 315). The letter continues: "Over the course of this time, she developed a need for an emotional support animal, Mia,[3] out of the fear from pain, feeling that she could collapse at any time in the street, and her bladder/bowel incontinence." (Doc. 10-11 at 315).

[3] The ALJ's decision refers to Cherilyn F. C.'s dog as "Lucy." (Doc. 10-2 at 30, 32, 36, 39). Dr. Manevitz's letter, however, refers to the animal as "Mia." (Doc. 10-11 at 315). The record does not explain this discrepancy, and neither party addresses it. The Court's analysis, in any event, turns on the absence of a prescription or recommendation rather than on the animal's identity.

This evidence is more substantial than the record found insufficient in *Byrne*, where the plaintiff pointed to no medical evidence whatsoever connecting her service dog to a prescription or recommendation from any medical source. 2025 WL 2753603, at *8. Dr. Manevitz's letter, by contrast, comes from a treating psychiatrist and ties Cherilyn F. C.'s need for a support animal to a specific, diagnosed psychiatric condition. It nonetheless falls short of what *Hewitt* and *Cruz* articulated. The letter states only that Cherilyn F. C. "developed a need for" the animal; it does not state that Dr. Manevitz prescribed or recommended it, nor does it identify any function the animal serves that bears on Cherilyn F. C.'s capacity to sustain work-related activities. *See Hewitt*, 2020 WL 1181953, at *3 (necessity requires evidence the animal was "medically prescribed or recommended," not merely that a medical source was aware of or referenced its presence).

Even where a service animal is medically recommended, courts in this district have declined to remand absent evidence showing how the claimed need would affect the claimant's ability to work or otherwise alter the RFC. *See Higdon*, 2024 WL 5484093, at *4 ("even if a service animal were medically recommended—and there is no evidence here that it was—any error would be harmless absent some showing, which Plaintiff has not made, of how such need would impact Plaintiff's ability to work or change the RFC assessment"). Dr. Manevitz's letter, which identifies no work-related function for the dog, supplies no such showing.

The Commissioner separately argues that Dr. Manevitz's letter does not qualify as a "medical opinion" at all under 20 C.F.R. § 404.1513(a)(2) because it

does not describe what work activities Cherilyn F. C. can or cannot perform. Whether a given statement satisfies that regulatory definition is a threshold legal question distinct from the weight-and-persuasiveness analysis at issue in *Simon v. Comm'r, Soc. Sec. Admin.*, 7 F.4th 1094 (11th Cir. 2021), which addressed an ALJ's stated reasons for discounting an opinion that was a medical opinion in the first instance. *See id.* at 1104-05. Applying that definition, Dr. Manevitz's letter does not constitute a medical opinion within the regulation's meaning: again, it states only that Cherilyn F. C. "developed a need" for an emotional support animal without identifying any resulting work-related limitation. *Higdon* rejected this same argument. There, the plaintiff likewise argued that crediting the Commissioner's rationale amounted to a post hoc justification, but the court explained that this presumes the ALJ was required to say more about the service dog in the first place. This presumption is wrong because a threshold showing of medical necessity must first be met. *See Higdon*, 2024 WL 5484093, at *4.

Cherilyn F. C. separately points to the VE's testimony that use of a service animal would constitute a "disability accommodation" not ordinarily available in competitive employment. (Doc. 10-11 at 71). The Court finds that this testimony does not independently obligate the ALJ to make findings regarding the service animal apart from the medical-necessity threshold, and that it does not require remand.

Nearly identical testimony was presented and rejected as a basis for remand in *Shue v. O'Malley*, No. 23-1795, 2024 WL 2827936 (4th Cir. June 4, 2024) (per

curiam). There, the vocational expert was asked whether a service animal is "a special accommodation that employers need to agree to on a case-by-case basis," and responded, "Yes . . . it's what I consider a special accommodation. So, Yes." *Id.* at *2. The Fourth Circuit held that the claimant's failure to present sufficient medical or nonmedical evidence of the service animal's medical necessity for use in the workplace was independently dispositive. *Id.* at *3. The Fourth Circuit also held that, even reaching the accommodation argument, the claimant's attempted distinction between a "special accommodation" (the VE's term) and a "reasonable accommodation" (the term used in Social Security Ruling 11-2p, which instructs that the agency does not consider whether a claimant could work with an accommodation, including one otherwise required under the Americans with Disabilities Act) was unpersuasive. *Id.* at *3-4. On that reasoning, VE testimony characterizing a service animal as an accommodation does not itself support incorporating a corresponding RFC limitation. If anything, it points toward the opposite conclusion since accommodations generally play no role in the RFC assessment. *Id.*

Defendant argues that SSR 11-2p applies only to claimants between the ages of 18 and 25. (Doc. 17 at 9). Cherilyn F. C. does not dispute that she—being well over 25 at the relevant time—falls outside its scope. *Shue* does not address this limitation, and the Court does not rely on SSR 11-2p as controlling authority here. Rather, *Shue* is persuasive for the narrower point that a VE's characterization of a device or animal as an "accommodation" does not, without more, establish that the

ALJ was required to incorporate a corresponding RFC limitation (a conclusion that follows independently from the medical-necessity requirement discussed above, without regard to SSR 11-2p's applicability). *See Cruz*, 406 F. Supp. 3d at 1346-47. Because Cherilyn F. C. has not established medical necessity, the Court need not decide what additional weight, if any, *Shue*'s discussion of SSR 11-2p would carry in a case where SSR 11-2p's age requirement was satisfied.

As stated above, the requirement of medical necessity remains the threshold showing a claimant must make before any question concerning limitations of an RFC. *See Cruz*, 406 F. Supp. 3d at 1346-47; *Hewitt*, 2020 WL 1181953, at *3. Because Cherilyn F. C. has not made that threshold showing, the VE's accommodation testimony does not independently require remand.

For these reasons, the Court finds that the ALJ's treatment of Cherilyn F. C.'s service animal is supported by substantial evidence and the Commissioner applied the correct legal standard.

**ORDERED:**

1. The decision of the Commissioner is **AFFIRMED**.

2. The Clerk of Court shall enter judgment in the Defendant's favor, terminate all scheduled events, and close the case.

In Fort Myers, Florida on September 15th, 2026.

Kevin R. Huguelet
United States Magistrate Judge